## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **Boost Payment Solutions, Inc.,** | : | |
| a Delaware corporation, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. __18-CV-4753__ |
| | : | |
| v. | : | |
| | : | |
| **Merchant Boost, LLC,** | : | |
| a Florida limited liability company, | : | |
| | : | ECF Case |
| Defendant. | : | |
| _____ | : | _____ |

## <u>COMPLAINT</u>

### A.  Introduction

1.      This is a Complaint for Defendant Merchant Boost, LLC's ("Defendant") violation of Plaintiff Boost Payment Solutions, Inc.'s ("Boost") rights in its suite of registered and common law service marks prominently featuring the term "Boost" as either the sole term or dominant portion of each of the marks.  Boost has been using its marks in commerce on a national basis since at least as early as 2010, in the merchant payment processing and credit card transaction processing industry.  Defendant has subsequently adopted, used and obtained registration in the U.S. Patent & Trademark Office ("USPTO") of, a service mark for MERCHANT BOOST (the "Infringing Mark") for services that are both directly competitive with and, in fact, virtually identical to the services offered by Boost.  Defendant's trademark application was filed on November 4, 2015 and registered on September 26, 2017, and Defendant claims a date of first use of March 2016.

2.      Defendant's use of the Infringing Mark will lead to a likelihood of confusion as to the identity of the producer of each company's services, as well as to a likelihood of confusion as

to Boost's affiliation with, endorsement of, or approval of Defendant's services.  Defendant's use

of the Infringing Mark will also subject Boost to loss of good will in its marks as it is unable to

control the quality of Defendant's services, which may be ascribed to Boost.

      3.      Boost, therefore, pleads a claim herein for trademark infringement under the

Lanham Trademark Act, 15 U.S.C. § 1114; false designation of origin under the Lanham

Trademark Act, 15 U.S.C. § 1125; common law trademark infringement; cancellation of

Defendant's federal trademark registration pursuant to 15 U.S.C. § 1119; common law unfair

competition; deceptive trade practices in violation of New York General. Business Law § 349;

and trademark dilution in violation of New York General Business Law § 360-1.  Boost seeks

preliminary and permanent injunctive relief enjoining Defendant's use of Boost's marks or any

confusingly similar variation thereof.  Boost also seeks all damages available pursuant to any of

the claims asserted herein.

### B.  Parties, Jurisdiction, and Venue

      4.      Plaintiff is a Delaware corporation having its principal place of business in New

York, New York.

      5.      Upon information and belief, Defendant is a Florida limited liability corporation

having its principal place of business in Sunrise, Florida.

      6.      This Court has subject matter jurisdiction over the claims asserted in this lawsuit

pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction); 28

U.S.C. § 1338 (jurisdiction over trademark and unfair competition claims); and 28 U.S.C. § 1367

(supplemental jurisdiction over state law claims).  Plaintiff is claiming damages, exclusive of

interest and costs, of over $75,000.

7.     This Court may exercise jurisdiction over the Defendant, as the Defendant operates an internet website that directs advertising and promotion of its services to residents of New York using the Infringing Mark; that Defendant comes within the purview of the New York long arm statute, CPLR § 302, by virtue of having transacted business within the state and/or entered into contracts to provide services within the state, and engaging in tortious conduct causing direct harm to Plaintiff in New York; and that, upon information and belief, Defendant does business in New York servicing New York customers using the Infringing Mark.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

**C.     Factual Allegations**

9.     Boost Payment Solutions, Inc. is a national leader in business-to-business (B2B) payment processing systems, including a variety of electronic payment methods, including but not limited to credit card transaction processing.  Boost offers not only business consultation services focusing on payment processing strategies, but also engages in the direct processing of electronic financial transactions.  Boost also operates a proprietary electronic payment platform. In sum, Boost partners with credit card issuers and corporate clients to provide a comprehensive enablement methodology that facilitates all aspects of a paper to electronic migration campaign. The paper to electronic migration campaign is formally started as soon as Boost has been engaged by a client to enable suppliers with electronic payment acceptance.

10.     Boost is the owner of the federally registered service mark BOOST PAYMENT SOLUTIONS, Reg. No. 4,070,805, filed on July 1, 2010, registered on December 13, 2011, with a date of first use in commerce at least as early as 2010, covering services related to the "migration of paper-based payment methods to electronic funds transfer, ACH, credit card, debit card, electronic check and other electronic payments on behalf of the business-to-business

community." Said registration is in force and valid, and has attained incontestablity under 15 U.S.C.A §§1065 and 1115(b). (Copy of Registration Certificate is attached as **Exhibit 1**.)

11.     Boost is also the owner of the federally registered service mark BOOST INTERCEPT, Reg. No. 4,679,227, filed on October 28, 2011 and registered on January 27, 2015, with a date of first use in commerce of December 2012, covering cloud computing services "featuring software for use in processing and transmitting electronic payment records, electronic payments and invoice-related data, for migrating paper-based and electronic payment methods to alternative electronic payment methods, and for generating and communicating associated reports." Said registration is in force and valid. (A copy of the Registration Certificate is attached as **Exhibit 2**.)

12.     Boost has also widely used the common law mark BOOST to advertise and promote its services since its inception, and is generally known by the shorthand name "Boost" in the payment processing industry. The BOOST mark has indeed become the primary umbrella mark under which Boost operates. The BOOST mark has become identified with Boost's services. **Exhibit 3** is a print-out from Boost's internet website at www.boostb2b.com, showing the BOOST mark used in a predominant manner to identify, advertise, and promote Boost's services.

13.     As noted previously, Boost is also engaged directly in the processing of electronic payments and credit card transactions for merchants. Boost has been using its marks with regard to these payment processing services since at least as early as 2010.

14.     Boost has therefore filed applications, which are currently pending before the USPTO, for the following new marks or additional classes for existing marks:

**BOOST**, Serial No. 87801093, filed on February 16, 2018, in Classes 035, 036, and 042, covering "Business consultation in the field of migration of paper-based payment

methods to electronic funds transfer, ACH, credit card, debit card, electronic check and other electronic payments on behalf of the business-to-business community" (IC 035) with a date of first use in commerce of December 2010; "Credit card payment processing services; Credit card transaction processing services; Providing electronic processing of credit card transactions and electronic payments via a global computer network" (IC 036) with a date of first use in commerce of December 2010; and "Cloud computing featuring software for use in processing and transmitting electronic payment records, electronic payments and invoice-related data, for migrating paper-based and electronic payment methods to alternative electronic payment methods, and for generating and communicating associated reports" (IC 042) with a date of first use in commerce of December 2012;

 (BOOST with design),Serial No. 87801099, filed on February 16, 2018, in Classes 035, 036, and 042, covering the same services as listed for **BOOST**, Serial No. 87801093, above, with the same dates of first use in commerce (December 2010 for classes 035 and 036 and December 2012 for class 042);

 (BOOST with design, in color), Serial No. 87801103, filed on February 16, 2018, in Classes 035, 036, and 042, covering the same services as listed for **BOOST**, Serial No. 87801093 above, with the same dates of first use in commerce (December 2010 for classes 035 and 036 and December 2012 for class 042);

**BOOST PAYMENT SOLUTIONS**, Serial No. 87801108, filed on February 16, 2018, in Class 036, covering "Credit card payment processing services; Credit card transaction processing services; Providing electronic processing of credit card transactions and electronic payments via a global computer network" with a date of first use in commerce of December 2010; and

**DYNAMIC BOOST**, Serial No. 87801113, filed on February 16, 2018, in Class 042, covering "Cloud computing featuring software for use in processing and transmitting electronic payment records, electronic payments and invoice-related data, for migrating paper-based and electronic payment methods to alternative electronic payment methods, for generating and communicating associated reports, and for assigning proprietary

interchange rates to transactions based on the time frame between invoice date and payment date."

(Copies of the information sheets for these applications, as displayed on the USPTO's TESS database, are attached as **Exhibits 4, 5, 6, 7 and 8**.)  (Plaintiff's registered marks, common law marks, and marks currently pending before the USPTO are, collectively, the "Boost Marks." These applications clarify that Boost has been using the Boost Marks for the actual processing of electronic payments and other transactions since as early as 2010 (for BOOST and BOOST PAYMENT SOLUTIONS) or 2012 (for BOOST INTERCEPT).  Boost's use of all of its Boost Marks substantially predate Defendant's first use of its Infringing Mark.

15.     It has come to Boost's attention that Defendant's predecessor, Growcap, LLC, applied for and received a trademark for MERCHANT BOOST, Reg. No. 5,297,015 covering services in Class 036 for:

> Merchant services, namely, payment transaction processing services; payment processing services, namely, credit card, debit card, ACH, electronic funds transfer, electronic check and electronic payments, multi-currency payments, domestic and offshore accounts payments; payment processing services, namely, credit card payments for Internet, mobile, mail/phone order and retail businesses.

(Print-out from USPTO database of information sheet relating to the Merchant Boost mark attached as **Exhibit 9**.)  Upon information and belief, Defendant was first organized as a corporate entity in or about March 2015 under the name Growcap, LLC and was converted to Merchant Boost, LLC in or about 2016.  Defendant's registration cites a date of first use of its mark as March 2016; nearly six years junior to Boost's first date of adoption of its marks.  (A copy of Defendant's registration is attached as **Exhibit 10**.)

16.     To obtain its trademark registration, Defendant was required to disclaim exclusive rights in the term "Merchant," in recognition of the fact that that term is purely descriptive as used in the Infringing mark, i.e., descriptive of the fact that Defendant is providing services to

merchants.  Thus, the only distinctive component of Defendant's Infringing Mark is the term

"Boost," which is also the predominant and distinctive term in each of Plaintiff's marks.

17.     The services Defendant identifies for its Infringing Mark are directly competitive

with and, in most cases, identical to services offered by Boost under its suite of Boost Marks.

18.     Furthermore, upon information and belief, Defendant would have (or certainly

should have) conducted a trademark search before filing for its mark.  Even a cursory search

would have put Defendant on notice of Boost's registrations for BOOST PAYMENT

SOLUTIONS and BOOST INTERCEPT covering services closely related to Defendant's

services.  Thus, Defendant had either actual notice or constructive notice, pursuant to 15

U.S.C.A. §1072, of Boost's registered marks.

19.     Additionally, a simple search of the internet would have revealed the existence of

Boost's website, showing the use of the BOOST, BOOST PAYMENT SOLUTIONS, and

BOOST INTERCEPT marks to advertise and promote Boost's services that are competitive with

and virtually identical to those of Defendant.

20.     Defendant is currently using its Infringing Mark to advertise and promote its

services competitive with those of Boost on its website at www.merchantboost.com and, upon

information and belief, in other ways, as well.

## COUNT I

### TRADEMARK INFRINGEMENT
### Under 15 U.S.C. § 1114 (Section 32 of the Lanham Trademark Act)

21.     Plaintiff Boost repeats and realleges all allegations of the Complaint as if fully

restated herein.

22.     At all times relevant hereto, Plaintiff has been the exclusive owner of the valid

and subsisting federally registered service marks BOOST PAYMENT SOLUTIONS, Reg. No.

4,070,805, which has achieved incontestable status, and BOOST INTERCEPT, Reg. No.

4,679,277, for services in the field of electronic payment processing for merchants and

businesses.

23.     Boost is also the owner of pending U.S. trademark applications for BOOST,

Serial No. 87801093; BOOST with design, Serial No. 87801099; BOOST with design, in color,

Serial No. 87801103; BOOST PAYMENT SOLUTIONS, Serial No. 87801108, and DYNAMIC

BOOST, Serial No. 87801113, for a variety of services in the field of electronic payment

processing for merchants and businesses.

24.     Through continued and extensive use and advertising, the Boost Marks have

become exclusively identified with Plaintiff.

25.     Defendant has infringed Plaintiff's marks in interstate commerce by various acts,

including the advertising and promotion of its services, which are directly competitive with

Plaintiff's services, using the Infringing Mark.

26.     Defendant continues to use the Infringing Mark, which is substantially similar to

Boost's marks.

27.     Such use is without the permission or authority of Boost and is likely to cause

confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of

Defendant with Plaintiff Boost; or as to the origin, and/or sponsorship, endorsement, or approval

by Plaintiff Boost, of Defendant's services, or commercial activities.

28.     Defendant's violation of Plaintiff's rights in its service marks is knowing, willful,

deliberate, fraudulent, and intentional, and was made with actual or constructive knowledge of

Plaintiff's marks, and that such violation would damage Boost and its service marks.

29.     As a direct result of Defendant's violations, as aforesaid, Plaintiff Boost has suffered, and will continue to suffer, substantial harm including, but not limited to, financial harm, as well as irreparable harm to its goodwill and reputation, which cannot be remedied unless Defendant is enjoined from use of the Infringing Mark or any of the Boost Marks, or any colorable imitation(s) thereof.

30.     Based on the foregoing, Defendant is liable to Boost for trademark infringement pursuant to Section 32 of the Lanham Act (15 U.S.C. § 1114), and Boost is entitled to all such equitable and legal remedies as may be available for said violation of its rights.

## COUNT II

### FEDERAL UNFAIR COMPETITION
### AND  FALSE DESIGNATION OF ORIGIN
### Under 15 U.S.C. § 1125 (section 43 of the Lanham Act)

31.     Plaintiff repeats and realleges all allegations of the Complaint as if fully set forth herein.

32.     At all times relevant hereto, Boost has been the exclusive owner of the service marks "BOOST PAYMENT SOLUTIONS"; "BOOST INTERCEPT"; "BOOST"; "BOOST, with design"; and "BOOST, with design, in color."  Boost has used all of these marks continuously and substantially exclusively for many years prior to Defendant's adoption of its Infringing Mark.

33.     Through continued and extensive use and advertising, Boost's service marks have become exclusively identified with Plaintiff Boost.

34.     Defendant has wrongfully used and continues to use the Infringing Mark and/or other confusingly similar words, terms, names, symbols, or devices, in commerce, in connection with its services.

35. Such use is likely to cause and/or has already caused confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff Boost or as to the origin, sponsorship, or approval of Defendant's services, or commercial activities, by Plaintiff.

36. Defendant's violation of Plaintiff's rights in the Boost Marks is knowing, willful, deliberate, fraudulent, and intentional, and was made with the knowledge that such violation would damage Plaintiff and the trademark.

37. As a direct result of Defendant's violations, as aforesaid, Plaintiff has suffered substantial harm including, but not limited to, financial harm, as well as irreparable harm to its goodwill and reputation, which cannot be remedied unless Defendant is enjoined from use of the Infringing Mark.

38. Based on the foregoing, Defendant is liable to Boost for unfair competition and false designation of origin pursuant to Section 43 of the Lanham Act (15 U.S.C. § 1125), and Boost is entitled to all such equitable and legal remedies as may be available for said violation of its rights.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT

39. Plaintiff repeats and realleges all allegations of the Complaint as if fully set forth herein.

40. Prior to Defendant's adoption of the Infringing Mark, Boost established rights, on a national basis, in the service marks "BOOST PAYMENT SOLUTIONS"; "BOOST INTERCEPT"; "BOOST" and "BOOST, with design"; and "BOOST, with design, in color."

41.     Plaintiff has continuously and extensively used these marks in commerce, in the field of electronic payment processing and related services, and, based on such use, Plaintiff is the owner of protected common law rights in its marks.

42.     Defendant has wrongfully used and continues to use the Infringing Mark and/or other confusingly similar words, terms, names, symbols, or devices, in commerce, in connection with its services.

43.     Such use is likely to cause and has already caused confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services, or commercial activities, by Plaintiff.

44.     Defendant's violation of Boost's rights in its marks is knowing, willful, deliberate, fraudulent, and intentional, and was made with the knowledge that such violation would damage Plaintiff and the trademark.

45.     As a direct result of Defendant's violations, as aforesaid, Plaintiff has suffered substantial harm including, but not limited to, financial harm, as well as irreparable harm to its goodwill and reputation, which cannot be remedied unless Defendant is enjoined from use of the Infringing Mark.

46.     Based on the foregoing, Defendant is liable to Boost for infringement of Boost's common law service marks, and Boost is entitled to all such equitable and legal remedies as may be available for said violation of its rights.

## COUNT IV

### CANCELLATION OF FEDERAL TRADEMARK REGISTRATION
### Under 15 U.S.C. § 1119 (Section 37 of the Lanham Act)

47.     Plaintiff repeats and realleges all allegations of the Complaint as if fully set forth herein.

48.     As stated previously, Boost is the owner of both federally registered and common law service marks incorporating the term "Boost"; and pertaining to services in the electronic payment processing industry and related services.

49.     Boost has used its marks continuously since well before the date on which Defendant adopted its Infringing Mark, MERCHANT BOOST.

50.     Defendant's use of the Infringing Mark violates Boost's rights in its service marks by infringing those marks and creating a false designation of origin. Such use is likely to cause and/or has already caused confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff Boost or as to the origin, sponsorship, or approval of Defendant's services, or commercial activities, by Plaintiff.

51.     Defendant obtained a registration of its Infringing Mark from the USPTO, Reg. No. 5,297,015, on September 26, 2017.

52.     Said mark should not have been registered by the USPTO due to the likelihood of confusion with Boost's registered service marks.

53.     Pursuant to 15 U.S.C.A. §1119, the District Court has the authority to, among other things, determine the right to federal registration of a trademark or service mark; order the cancellation of registrations, in whole or in part; and to otherwise rectify the register with respect to the registrations of any party to the action.  Furthermore, such determinations by the Court are controlling on the USPTO.

54.     For the reasons stated herein, the Court should find that the Infringing Mark was registered in error, and should order the USPTO to cancel the Infringing Mark.

## COUNT V
## UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

55.     Plaintiff repeats and realleges all allegations of the Complaint as if fully set forth herein.

56.     At all times relevant hereto, Boost has been the exclusive owner of the service marks "BOOST PAYMENT SOLUTIONS"; "BOOST INTERCEPT"; "BOOST"; "BOOST, with design"; and "BOOST, with design, in color."  Boost has used all of these marks continuously and substantially exclusively for many years prior to Defendant's adoption of its Infringing Mark.

57.     Through continued and extensive use and advertising, the Boost Marks have become exclusively identified with Plaintiff Boost.

58.     Defendant has wrongfully used and continues to use the Infringing Mark and/or other words, terms, names, symbols, or devices confusingly similar to the Boost Marks, in commerce in New York State and in connection with its goods and services.

59.     Such use is likely to cause and/or has already caused confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff Boost or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities, by Plaintiff.

60.     Defendant's violation of Plaintiff's rights in the Boost Marks is knowing, willful, deliberate, fraudulent, and intentional, and was made with the knowledge that such violation would damage Plaintiff and the Boost Marks, i.e., to reap benefits where Defendant has not sown and to misappropriate Boost's valuable intellectual property rights.

61.     As a direct result of Defendant's violations, as aforesaid, Plaintiff has suffered substantial harm including, but not limited to, financial harm, as well as irreparable harm to its goodwill and reputation, which cannot be remedied unless Defendant is enjoined from use of the Infringing Mark and any marks confusingly similar to the Boost Marks.

62.     Based on the foregoing, Defendant is liable to Boost for unfair competition under New York common law, and Boost is entitled to all such equitable and legal remedies as may be available for said violation of its rights.

**COUNT VI**

**DECEPTIVE TRADE PRACTICES**
**New York General Business Law § 349**

63.     Plaintiff repeats and realleges all allegations of the Complaint as if fully set forth herein.

64.     As set forth above, Defendant has been using, in New York State and elsewhere, a service mark that is confusingly similar to Plaintiff's marks containing the term "Boost," and which infringes on Plaintiff's marks.

65.     Defendant has been using its Infringing Mark with regard to services that are identical to services performed by Plaintiff in the electronic payment processing industry; and Defendant has been marketing its services in competition with Plaintiff's services.

66.     Defendant's use of the Infringing Mark has been with the intent to deceive the public, i.e., potential users of Plaintiff's and Defendant's services.

67.     Defendant's conduct has thus been consumer oriented, and Defendant has been engaged in commercial practices that are deceptive and misleading in a material manner.

68.     As a direct result of Defendant's violations, as aforesaid, Plaintiff has suffered substantial harm including, but not limited to, financial harm, as well as irreparable harm to its

goodwill and reputation, which cannot be remedied unless Defendant is enjoined from use of the Infringing Mark.

69.     Based on the foregoing, Defendant is liable to Boost for deceptive trade practices under New York's General Business Law § 349, and Boost is entitled to all such equitable and legal remedies as may be available for said violation of its rights.

**COUNT VII**

**TRADEMARK DILUTION**
**New York General Business Law § 360-l**

70.     Plaintiff repeats and realleges all allegations of the Complaint as if fully set forth herein.

71.     As alleged herein, Plaintiff is the owner of a suite of service marks, all containing the dominant term "Boost," including the mark BOOST, as well as other compound marks containing the "boost" term.  Plaintiff's service marks are distinctive.

72.     Defendant has adopted its Infringing Mark, which uses the distinctive "Boost" term and is marketing its services, in New York and elsewhere, that are competitive to those of Plaintiff using the Infringing Mark.

73.     Plaintiff is a national leader in the electronic payment processing industry, whereas Defendant has only recently adopted its mark.

74.     Plaintiff has no ability to control or monitor Defendant's services and its goodwill and business reputation have been placed at risk of injury.

75.     Defendant's use, of the Infringing Mark is diluting the distinctive quality of Boost's marks, both registered and unregistered.

76.     Even were there to be no finding of competition between the parties or likelihood of confusion as to the source of the parties' respective services, based on the foregoing,

Defendant is liable to Boost for trademark dilution and injury to business reputation under New York's General Business Law § 360-l, and Boost is entitled to all injunctive relief as may be available for said violation of its rights.

## REMEDIES

**WHEREFORE,** Plaintiff Boost Payment Solutions, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant, as follows:

(a)     Determining that Defendant has violated (i) the Lanham Trademark Act, 15 U.S.C. §§ 1114(a) and 1125(a); (ii) the federal and state common law of trademark infringement; (iii) the New York common law of unfair competition; (iv) New York General Business Law § 349; and New York General Business Law § 360-1;

(b)     Determining that Plaintiff has been damaged by Defendant's aforesaid violations, and will continue to be damaged in the absence of an injunction;

(c)     Determining that Defendant is liable to Plaintiff for the aforesaid violations;

(d)     Ordering the U.S. Patent and Trademark Office to cancel Defendant's federal trademark registration, Reg. No. 5,297,015, pursuant to 15 U.S.C. § 1119;

(e)     Preliminarily and permanently enjoining Defendant, its partners, directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with any of the above, from directly or indirectly using or displaying "Merchant Boost"; "Boost"; any of Plaintiff's registered or common law trademarks or service marks; or any colorable imitation thereof, as part of any trademark, service mark or trade name, or in such a way as to be likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities, by Plaintiff;

(f)      Preliminarily and permanently enjoining Defendant, its partners, directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with any of the above, from using "Merchant Boost"; "Boost"; any of Plaintiff's registered or common law trademarks or services; or any colorable imitation thereof, as part of any advertising or promotional materials published in any and all media, including, but not limited to print media and electronic media; and

(g)      Preliminarily and permanently enjoining Defendant, its partners, directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with any of the above, from making, in any manner and in any medium or forum whatsoever, any statement or representation, or performing any act likely to lead members of the public to believe, that Defendant is, in some manner, either directly or indirectly, associated, affiliated or connected with, or licensed, sponsored, authorized, approved, or endorsed by Plaintiff;

(h)      Ordering Defendant to assign to Plaintiff the internet domain name (URL) www.merchantboost.com;

(i)      Ordering Defendant and its agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment, a written report under oath, setting forth in detail the manner and form in which they have complied with such judgment;

(j)      Requiring Defendant to account to Plaintiff for all income and benefits received by Defendant from the use of the Infringing Mark, the Boost Marks, or any colorable imitation

thereof, including, but not limited to, "Merchant Boost"; and that Defendant be required to disgorge to Plaintiff all such income;

(k)     Requiring Defendant to pay Plaintiff all damages suffered by Plaintiff as a result of Defendant's violations of Plaintiff's rights under the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a); New York General Business Law § 349; New York General Business Law § 360-1; federal common law, and state common law, as proven at trial;

(l)     Requiring Defendant to pay Plaintiff treble (three times actual) damages, pursuant to 15 U.S.C. § 1117;

(m)     Requiring Defendant to pay Plaintiff's costs and expenses, including its reasonable attorney fees, for violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.,* and state statutes providing for recovery of costs and fees, as aforesaid; and

(n)     Granting Plaintiff such other relief as this Honorable Court deems just.

Respectfully submitted,

McLAUGHLIN & STERN, LLP


By:     */s/ Paul H. Levinson*
         Paul H. Levinson (PH5528)
         Oliver R. Chernin (OC4516)
         260 Madison Avenue
         New York, NY 10016
         plevinson@mclaughlinstern.com
         ochernin@mclaughlinstern.com
         (212) 448-1100

                 -   and   -

         JAFFE, RAITT, HEUER & WEISS, P.C.


By:     */s/ Peter M. Falkenstein*
         Peter M. Falkenstein (PF2212)
         535 W. William St., Ste. 400S
         Ann Arbor, MI  48103
         pfalkenstein@jaffelaw.com
         (734) 222-4776

         *Attorneys for Plaintiff Boost Payment Solutions,
         Inc.*